IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES ALTON NANCE AND          )
MARTHA V. NANCE,               )
             Plaintiffs,      )
                               )
    v.                         )          1:13CV1062
                               )
CITIMORTGAGE, INC.,            )
             Defendant.       )

## MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is currently before the Court on a Motion to Dismiss [Doc. #10], pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendant Citimortgage, Inc. ("Defendant"). In the underlying action, Plaintiffs James Alton Nance and Martha V. Nance ("Plaintiffs") bring five claims under North Carolina law in connection with Defendant's alleged wrongful debt collection practices against Plaintiffs. For the reasons discussed below, Defendant's Motion [Doc. #10] is granted in part and denied in part. Specifically, this Court will dismiss all of Plaintiffs' claims except the unfair and deceptive trade practices claim.

## I.     BACKGROUND

The factual allegations of Plaintiffs' Complaint [Doc. #5], taken as true for purposes of Defendant's Motion to Dismiss [Doc. #10], allege that Plaintiffs refinanced the mortgage on their home in June 2013. At some point after the refinance was complete, Defendant began servicing Plaintiffs' new mortgage. Beginning in late 2008, Defendant sent dozens of letters and made dozens of harassing and threatening phone calls to Plaintiffs, telling them that their mortgage payments were delinquent. However, the mortgage payments had in fact been made

timely and were current, as Plaintiffs repeatedly told Defendant. Defendant nonetheless refused to accurately account for the timely payments by Plaintiffs.

Beginning in January 2010, Defendant stopped accepting the wire transfers from Plaintiffs, which Plaintiffs had been using to make their monthly mortgage payments. Defendant also "force-placed" insurance on Plaintiffs' home, even though the existing insurance on the home had not lapsed. Then in February 2010, the law firm of Rogers Townsend & Thomas, P.C. ("Rogers"), initiated foreclosure proceedings against Plaintiffs on behalf of Defendant. Throughout foreclosure proceedings, Plaintiffs sent Rogers evidence in the form of canceled checks and proof of insurance to prove that the payments were not delinquent and that the insurance had not lapsed, but Rogers and Defendant told Plaintiffs that they needed to pay the entire balance due to prevent the foreclosure. The foreclosure proceedings were ultimately dismissed by Defendant in August 2010.

In order to pay off the loan serviced by Defendant, Plaintiffs had to refinance their mortgage in March 2011. This resulted in Plaintiffs having to pay closing costs for the transaction, which included late charges, attorneys' fees, escrow advance fees, and other charges that should not have been included in the final amount due.

Prior to the foreclosure proceedings, Plaintiffs purchased a new automobile in 2010, and were informed that their interest rate would be "significantly higher than it should be," because of the late mortgage payments that had been inaccurately reported to consumer reporting agencies by Defendant. (Compl. [Doc. #5] ¶ 16.) Furthermore, Plaintiffs' reputation in the community was damaged, as a result of Defendant's conduct, because individuals in the

community incorrectly concluded that Plaintiffs were not paying their mortgage payments. The continued collection efforts also led to "severe emotional distress" on the part of Plaintiffs. (Compl. [Doc. #5] ¶¶ 23-24.)

Plaintiffs then instituted this action against Defendant in state court on September 16, 2013. Defendant removed this case to this Court on November 22, 2013, based on diversity jurisdiction. Plaintiffs' lawsuit brings five causes of action under North Carolina law against Defendant: (1) unfair and deceptive trade practices, (2) "negligent and/or intentional infliction of emotional distress," (3) "negligent handling of account," (4) "negligent and/or intentional damage to reputation," and (5) "negligent and/or intentional damage to credit report." Defendant has filed a Motion to Dismiss [Doc. #10], asking the Court to dismiss all of Plaintiffs' claims for failure to state a claim. This Motion is now ripe for review.

II.    STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Fourth Circuit has directed that courts "'take the facts in the light most favorable to the plaintiff,' but '[they] need not accept the legal conclusions drawn from the facts,' and '[they] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868

(2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief.""" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557, 127 S. Ct. 1955) (citations omitted). Thus, dismissal of a complaint is proper where a plaintiff's factual allegations fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 256 (4th Cir. 2009) (quoting <u>Iqbal</u>, 556 U.S. at 683, 129 S. Ct. 1937).

Although the Court generally may not consider any new allegations raised by Plaintiffs in their Response or the attachments to their Response without converting the proceeding to one for summary judgment, the Court may consider the attachments to either the Motion to Dismiss [Doc. #10] or the Response [Doc. #17] if they are incorporated by reference into the Complaint. <u>Bailey v. Va. High School League, Inc.</u>, 488 F. App'x 714, 715-16 (4th Cir. 2012) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint and any documents attached or incorporated by reference[; h]owever, the district cannot go beyond these documents on a Rule 12(b)(6) motion without converting the motion

into one for summary judgment." (citations omitted)); see Bala, 532 F. App'x at 334 ("The district court may go beyond the complaint and attached documents, which constitute 'the pleadings,' in a Rule 12(b)(6) proceeding if the court converts the proceeding to one for summary judgment." (citing Fed. R. Civ. P. 12(d))). Therefore, the Court will consider documents submitted by either Plaintiffs or Defendant only if they have been incorporated by reference into the Complaint.

## III.  DISCUSSION

### A.  Unfair and Deceptive Trade Practices Claim

The first claim Plaintiffs bring against Defendant is an unfair and deceptive trade practices claim. Specifically, this claim appears to focus on Defendant's alleged unfair debt collection practices.[1] North Carolina's Unfair or Deceptive Trade Practices Act, N.C. General Statute § 75-1.1, *et seq.* ("UDTPA") regulates trade practices in North Carolina. N.C. Gen. Stat.

---

[1] It appears that Plaintiffs may also intend to bring a claim that Defendant violated N.C. General Statute § 58-70-115, as Plaintiffs cite this among the various statutes listed in the first cause of action. (Compl. [Doc. #5] ¶ 21.) However, § 58-70-115 defines unfair practices that apply only to collection agencies, as defined under § 58-70-15. N.C. Gen. Stat. § 58-70-115 (2013) (statute entitled "unfair practices" under Part 3 of Article 70, Chapter 58, which is entitled "Prohibited Practices *by Collection Agencies* Engaged in the Collection of Debt from Consumers" (emphasis added)). Plaintiffs' Complaint asserts that Defendant is a "debt collector" as defined in § 75-50 (Compl. [Doc. #5] ¶ 2), which is a definition that expressly excludes collection agencies as defined in § 58-70-115. N.C. Gen. Stat. § 75-50(3) (2013) (defining "debt collector" as "any person engaging, directly or indirectly, in debt collection from a consumer *except those persons subject to the provisions of Article 70, Chapter 58 of the General Statutes*" (emphasis added)). Plaintiffs do not offer any argument or reason as to why Defendant should be subject to § 58-70-115 when Defendant, by definition, falls outside of the purview of § 58-70-115 by Plaintiffs' own designation in the Complaint. Although Plaintiffs' Complaint asserts that Rogers is a "collection agency" pursuant to Article 70 of Chapter 58, Rogers is not a defendant in this case. Therefore, unless Plaintiffs join Rogers as a defendant in this case, Plaintiffs' unfair and deceptive trade practices claim cannot encompass a violation of § 58-70-115.

§ 75-1.1 (2013). Article 1 of the UDTPA contains a general ban on "unfair or deceptive acts or practices in or affecting commerce." Id. § 75-1.1(a). Article 2 of the UDTPA is the North Carolina Debt Collection Act, N.C. General Statute § 75-50, *et seq.* ("NCDCA"). North Carolina courts have held that the NCDCA contains three threshold requirements for a claim that is based on alleged unfair debt collection practices: (1) the obligation owed must be a debt; (2) the one owning the obligation must be a consumer; and (3) the one trying to collect the obligation must be a debt collector. Davis Lake Cmty Ass'n, Inc. v. Feldmann, 138 N.C. App. 292, 295, 530 S.E.2d 865, 868 (2000) (citing Reid v. Ayers, 138 N.C. App. 261, 531 S.E.2d 231 (2000)). Defendant does not address these threshold requirements or contest that Plaintiffs have adequately pleaded these requirements.

In addition to these three threshold requirements of Plaintiffs' unfair debt collection practices claim, Plaintiffs' claim must also satisfy the more generalized requirements of all unfair or deceptive trade practice claims: (1) an unfair or deceptive act (2) in or affecting commerce (3) proximately causing injury. Davis Lake Cmty Ass'n, Inc., 138 N.C. App. at 296, 530 S.E.2d at 868 (citing First Atl. Mgmt. Corp. v. Dunlea Realty Co., 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998)); see Gray v. North Carolina Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000) (stating that, in order to establish a violation of North Carolina's UDTPA, a plaintiff must show "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs"). Defendant does not contest that Plaintiffs have adequately pleaded the last two requirements. Rather, Defendant only contests that Plaintiffs' Complaint is insufficient as to the unfair act requirement.

"In the context of debt collection, [the unfair or deceptive act requirement] include[s] the use of threats, coercion, harassment, unreasonable publications of the consumer's debt, deceptive representations, and unconscionable means." <u>Davis Lake Cmty Ass'n, Inc.</u>, 138 N.C. App. at 296, 530 S.E.2d at 868 (citing N.C. Gen. Stat. §§ 75-51 to -56). In <u>Davis Lake Comty Ass'n, Inc.</u>, the North Carolina Court of Appeals held that the plaintiff satisfied the unfair or deceptive act requirement when it alleged that defendant homeowners' association stated to the plaintiff that the amount needed to satisfy their obligation included attorney's fees well in excess of the fifteen percent statutory limit. <u>Id.</u> at 296, 530 S.E.2d at 868-69. In addition, in a case that is quite analogous to this case, the Eastern District of North Carolina found that the plaintiffs in <u>Redmond v. Green Tree Servicing, LLC</u>, stated an UDTPA claim by alleging that the defendant conducted purposeful, targeted, and directed communications for the purpose of collecting a debt for which the plaintiffs were not actually liable. 941 F. Supp. 2d 694, 698-99 (E.D.N.C. 2013).

In this case, Plaintiffs have provided specific allegations of dozens of harassing and threatening letters and phone calls at all hours of the day and night by Defendant, made in an attempt to collect a debt for which they were not liable. (Compl. [Doc. #5] ¶¶ 7-8, 17, 20-21.) Plaintiffs also provided specific allegations about how Defendant was told repeatedly that Plaintiffs' mortgage payments were not delinquent, but continued to harass them for payments anyway. (<u>Id.</u> ¶¶ 8, 13-14, 20.) Plaintiffs further allege that Defendant began refusing to accept Plaintiffs' payments, force placed insurance on the home when the Plaintiffs' homeowners insurance had not lapsed, wrongfully initiated foreclosure proceedings, and eventually required

Plaintiffs to pay late fees, attorneys fees, and other payments that Plaintiffs did not actually owe Defendant. (Id. ¶¶ 9-14, 19-21.) Such allegations are sufficient to satisfy the unfair or deceptive act requirement of an unfair or deceptive trade practices claim. See Redmond, 941 F. Supp. 2d at 699 ("[T]aking the plaintiffs' complaint in the light most favorable to them and finding that the statutory language encompasses claims by individuals who are harassed for debts allegedly, if not actually, incurred by them[,] the Court finds that the complaint did state a claim upon which relief might be granted."). Therefore, Plaintiffs have stated a claim upon which relief may be granted, and Defendant's Motion to Dismiss [Doc. #10] as to this cause of action is denied.

B.     Negligent and/or Intentional Infliction of Emotional Distress

To state a claim for negligent infliction of emotional distress ("NIED") under North Carolina law, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress [ ], and (3) the conduct did in fact cause the plaintiff severe emotional distress." Johnson v. Ruark Obstetrics and Gynecology Assocs, P.A., 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990) (citations omitted). The first NIED element requires that Plaintiff allege that the "defendant failed to exercise due care in the performance of some legal duty owed to [the] plaintiff under the circumstances[.]" Guthrie v. Conroy, 152 N.C. App. 15, 25, 567 S.E.2d 403, 410-11 (2002).

Under North Carolina law, the elements of an intentional infliction of emotional distress ("IIED") claim are "(1) extreme and outrageous conduct by the defendant (2) which is intended to and does in fact cause (3) severe emotional distress." Id. at 21, 567 S.E.2d at 408 (quoting

Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992)).  An IIED claim may also proceed where "[a] defendant's actions indicate a reckless indifference to the likelihood that [he] will cause severe emotional distress."  Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 488, 340 S.E.2d 116, 119-120 (1986) (quoting Dickens v. Puryear, 302 N.C. 437, 452-53, 276 S.E.2d 325, 335 (1981)).

Defendant contends that this cause of action is insufficient for two reasons: (1) Plaintiffs have failed to adequately allege severe emotional distress, which is a requisite element of both NIED and IIED; and (2) Plaintiffs' IIED claim fails because Plaintiffs have not alleged conduct that is sufficiently extreme or outrageous.  While Plaintiffs address the extreme or outrageous conduct contention in their Response, they do not address the severe emotional distress contention.

"An essential element of both intentional and negligent infliction of emotional distress is 'severe emotional distress' . . . ."  Soderlund v. Kuch, 143 N.C. App. 361, 367, 546 S.E.2d 632, 637 (2001) (citing Johnson, 327 N.C. at 304, 395 S.E.2d at 97).  "[M]ere temporary fright, disappointment or regret will not suffice."  Johnson, 327 N.C. at 304, 395 S.E.2d at 97.  Rather, to establish severe emotional distress, Plaintiffs must show an "emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so."  Id.; Waddle, 331 N.C. at 83, 414 S.E.2d at 27 (adopting the same standard for severe emotional distress in IIED claims as that announced in Johnson for NIED claims); Soderlund, 143 N.C. App. at 367, 546 S.E.2d at 637.

As "'severe emotional distress' is defined in terms of diagnosable emotional or mental conditions" (Williams v. HomEq Servicing Corp., 184 N.C. App. 413, 419, 646 S.E.2d 381, 385 (2007)), a plaintiff's NIED or IIED claims are properly dismissed where a plaintiff fails to allege facts tending to show that the plaintiff sustained severe emotional distress as defined in terms of a diagnosable emotional or mental condition.  Friedman v. Bank of Am., N.A., 758 S.E.2d 481, 2014 WL 1042259, at *4 (N.C. Ct. App. Mar. 18, 2014); Horne v. Cumberland Cnty Hosp. Sys., Inc., 746 S.E.2d 13, 20 (N.C. Ct. App. 2013) (affirming that the plaintiff's complaint fails to state a claim for NIED where the complaint merely asserts that the defendant's actions were the direct and proximate cause of the plaintiff's "severe emotional distress," "without any factual allegations regarding the type, manner, or degree of severe emotional distress [the plaintiff] claims to have experienced").  Although Plaintiffs make specific factual allegations about things that happened *to* them, the Court's review of Plaintiffs' Complaint [Doc. #5] does not find any specific factual allegations that address the emotional *result* of those actions that would tend to support the conclusion that Plaintiffs have suffered a diagnosable emotional or mental condition as required to satisfy the severe emotional distress requirement.  Rather, Plaintiffs merely allege that they suffered "severe emotional distress" as a result of Defendant's conduct, without any additional factual details provided as to the nature of the severe emotional distress suffered. (Compl. [Doc. #5] ¶¶ 23, 24.)  Because a diagnosable emotional or mental condition is a requirement for either a NIED claim or an IIED claim under North Carolina law, the Court will

grant Defendant's Motion to Dismiss [Doc. #10] with regard to this cause of action, and dismiss

Plaintiffs' NIED and/or IIED claim.[2]

C.    Common Law Negligence: Defendant's "Handling of Account"

Plaintiffs' third cause of action is entitled, "negligent handling of account."   As

Defendant points out, and Plaintiffs do not dispute, there is no such claim by this name in

North Carolina.   Rather, it appears that Plaintiffs intend to bring a common law negligence

claim, based on Defendant's conduct in "handling" Plaintiffs' mortgage account.

To state a common law negligence claim under North Carolina law, Plaintiffs must show

"(1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." Bridges

v. Parrish, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013) (quoting Stein v. Asheville Bd. of

Educ., 360 N.C. 321, 328, 626 S.E.2d 263, 267 (2006)).   Defendants contend that Plaintiffs do

not identify a specific duty that Defendants breached.   Plaintiffs do not respond to this argument

in their Response.

---

[2] Although Plaintiffs ask the Court for leave to amend their Complaint to include more specific allegations, the more specific allegations asserted in Plaintiffs' Response do not include any more specific allegations regarding the severe emotional distress requirement of an NIED or IIED claim.   Indeed, Plaintiffs do not offer *any* argument in response to this deficiency identified by Defendant's Motion to Dismiss Brief [Doc. #11].   Furthermore, Plaintiffs' counsel has not attached a proposed amended pleading to the motion, as is required by the Local Rule 15.1, since the time for amendment as a matter of course has passed.   N.C.M.D. R. 15.1 ("If a party is required by the Rules to file a motion in order to seek leave to amend a pleading, the moving party shall attach the proposed amended pleading to the motion.").   As such, the Court has no indication that Plaintiffs could potentially cure this deficiency through amending their Complaint.   Therefore, the Court will deny Plaintiffs' general request to amend their Complaint, at least with regard to curing this specific deficiency.

This cause of action alleges that Defendant should have known that Plaintiffs were not delinquent on their mortgage payments, and that because Defendant failed to accurately and timely credit Plaintiffs' account upon receipt of the monthly mortgage payments, Defendant harmed Plaintiffs. (Compl. [Doc. #5] ¶¶ 26-29.) Plaintiffs also allege that Defendant's later refusal to accept Plaintiffs' monthly mortgage payments and filing of the foreclosure action further harmed Plaintiffs. (Id. ¶ 30.) Based on the Court's review of Plaintiffs' Complaint [Doc. #5], the Court does not find any allegations in which Plaintiffs identify what legal duty Defendant allegedly breached. Indeed, the Court does not find even a cursory allegation that Defendant had *any* duty that it allegedly breached.

"Under general principles of the law of torts, a breach of contract does not in and of itself provide the basis for liability in tort." Hardin v. York Mem'l Park, 730 S.E.2d 768, 775 (N.C. Ct. App. 2012) (quoting Asheville Contracting Co. v. Wilson, 62 N.C. App. 329, 342, 303 S.E.2d 365, 373 (1983)) (internal quotation marks omitted). "Ordinarily, an action in tort must be grounded on a violation of a duty imposed by operation of law, and the right invaded must be one that the law provides without regard to the contractual relationship of the parties, rather than one based on an agreement between the parties." Id. at 775-76 (quoting Wilson, 62 N.C. App. at 342, 303 S.E.2d at 373). "A failure to perform a contractual obligation is never a tort unless such nonperformance is also the omission of a legal duty." Id. at 776 (quoting Toone v. Adams, 262 N.C. 403, 407, 137 S.E.2d 132, 135 (1964)). "The duty owed by a defendant to a plaintiff may have sprung from a contractual promise made to another; however, the duty sued on in a negligence action is not the contractual promise but the duty to use reasonable care in

affirmatively performing that promise." Id. (quoting Oates v. Jag, Inc., 314 N.C. 276, 279, 333 S.E.2d 222, 225 (1985)).

Furthermore, "[o]rdinary borrower-lender transactions . . . are considered arm's length and do not typically give rise to fiduciary duties." Dallaire v. Bank of Am., N.A., -- S.E.2d --, 2014 WL 2612658, at *4 (N.C. June 12, 2014) (citing Sec. Nat'l Bank of Greensboro v. Educators Mut. Life Ins. Co., 265 N.C. 86, 95, 143 S.E.2d 270, 276 (1965); Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992) (The "mere existence of a debtor-creditor relationship between [the parties does] not create a fiduciary relationship." (quoting United Va. Bank v. Air-Lift Assocs., Inc., 79 N.C. App. 315, 322, 339 S.E.2d 90, 94 (1986)) (internal quotation marks omitted)). "[B]orrowers and lenders are generally bound only by the terms of their contract and the Uniform Commercial Code." Id. (citing Thompson, 107 N.C. App. at 61, 418 S.E.2d at 699; Camp v. Leonard, 133 N.C. App. 554, 560, 515 S.E.2d 909, 913 (1999) (citing and applying previous Court of Appeals cases holding that "a lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party")). Although a fiduciary relationship may exist under a variety of circumstances (see id. (citing Thompson, 107 N.C. App. at 61, 418 S.E.2d at 699)), without any argument by Plaintiffs on this point, the Court cannot presume that any such circumstances exist.

Therefore, it is unclear from the Complaint what legal duty, if any, Defendant allegedly breached. Given that a legal duty typically does not arise in a commercial borrower-lender setting, and given that Plaintiffs do not offer any reason or special circumstance that would lead the Court to conclude that a fiduciary relationship exists when it is typically not present in

commercial borrower-lender transactions, the Court will grant Defendant's Motion to Dismiss [Doc. #10] as to this claim, and Plaintiffs' third cause of action is dismissed.[3]

D.     Defamation

Plaintiffs' fourth cause of action is labeled "negligent and/or intentional damage to reputation."  Although it is unclear from this title exactly what claim Plaintiffs are bringing, Defendants address it as if it is a claim of defamation, which is a categorization that Plaintiffs do not dispute.  Therefore, this Court will treat this cause of action as a defamation claim.

"In North Carolina, the term defamation applies to the two distinct torts of libel and slander."  Pierce v. Atl. Grp., Inc., 724 S.E.2d 568, 578 (N.C. Ct. App. 2012) (quoting Boyce & Isley, PLLC v. Cooper, 153 N.C. App. 25, 29, 568 S.E.2d 893, 898 (2002)).  "In general, libel is written while slander is oral."  Id. (quoting Phillips v. Winston-Salem/Forsyth Cnty. Bd. of Educ., 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (1994)).  Plaintiffs' defamation claim appears to be based solely on Defendant's filing of a foreclosure action against Plaintiffs, which became public record and purportedly led to various individuals in Randolph County making disparaging comments about Plaintiffs and asking Plaintiffs whether they stopped paying their mortgage payments.  (Compl. [Doc. #5] ¶¶ 31-33.)  Because the foreclosure filing is a written document, it appears that Plaintiffs contend that Defendant has engaged in libelous defamation.

---

[3] Again, despite Plaintiffs' general request for leave to amend their Complaint to include more specific allegations, the more specific allegations in Plaintiffs' Response do not cure this deficiency.  Indeed, again, Plaintiffs do not offer *any* argument in response to this deficiency identified by Defendant's Motion to Dismiss Brief [Doc. #11].  Because the Court has no indication that Plaintiffs' amendment would cure this deficiency, the Court will deny Plaintiffs' general request to amend their Complaint, at least with regard to curing this specific deficiency.

"In order to recover for [libelous] defamation, a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." Pierce, 724 S.E.2d at 578 (quoting Tyson v. L'Eggs Products, Inc., 84 N.C. App. 1, 10-11, 351 S.E.2d 834, 840 (1987)). However, without addressing whether any statements in the foreclosure filing could be defined as libel under this standard, Defendant instead contends that absolute privilege applies to its foreclosure filing, because a judicial proceeding is a recognized setting in which absolute privilege applies to libelous defamatory statements.

Defamatory statements made in the due course of judicial proceedings are indeed "absolutely privileged and will not support a civil action for defamation, *even though they be made with express malice*." In re Cline, 749 S.E.2d 91, 100 (N.C. Ct. App. 2013) (emphasis added) (citing Jarman v. Offutt, 239 N.C. 468, 472, 80 S.E.2d 248, 251 (1954)). In response to this point, Plaintiffs' counsel cites Smith-Price v. Charter Behavioral Health Systems's description of the essential elements of "the *qualified* privilege." 164 N.C. App. 349, 356, 595 S.E.2d 778, 783 (2004) (emphasis added). The emphasis on "qualified" is key, as this case does nothing to address the legal precedent according *absolute* privilege to defamatory statements made in a judicial proceeding. Indeed, Smith-Price addresses the tort of slander, rather than libel, and does not involve defamatory statements made in the context of a judicial proceeding. As such, it is not relevant to Defendant's contention that any alleged libelous statements made in the foreclosure proceeding are absolutely privileged. Therefore, because Plaintiffs do not offer any reason to dispute the conclusion that any alleged libelous statements made in the foreclosure

proceeding are absolutely privileged, the Court will grant Defendant's Motion to Dismiss [Doc. #10] as to this claim, and dismiss Plaintiffs' claim of defamation.[4]

E.     Fair Credit Reporting Act or Common Law Negligence

Finally, Plaintiffs' fifth cause of action is labeled "negligent and/or intentional damage to credit report."  Although it is again unclear from this title exactly what type of claim Plaintiffs are bringing, Defendant addresses it as if it is either a cause of action brought under the Fair Credit Reporting Act ("FCRA"), or alternatively, a cause of action for common law negligence. Defendant contends that if this claim is a FCRA claim, then it should be dismissed, because the statute of limitations has expired.  Defendant also contends that if this claim is a negligence claim, then it should be dismissed because it is preempted by the FCRA.

Plaintiffs do not clarify what type of claim they intended to bring with this cause of action in their Response.  However, Plaintiffs only respond to Defendant's preemption argument, asserting that their claim is not preempted by the FCRA, without addressing the reason why Defendant contends that the FCRA claim should be dismissed.  Based on Plaintiffs' Response, this Court could likely just proceed to address this claim solely as a common law negligence claim.  However, the Court will nonetheless consider whether Plaintiffs' cause of action can survive under either the FCRA or common law negligence.

---

[4]  Yet again, despite Plaintiffs' general request for leave to amend their Complaint to include more specific allegations, the more specific allegations in Plaintiffs' Response do not cure this deficiency.  Because the Court has no indication that Plaintiffs' amendment would cure this deficiency, the Court should likely deny Plaintiffs' general request to amend their Complaint, at least with regard to curing this specific deficiency.

i.      If this is an FCRA Claim

In this cause of action, Plaintiffs allege that "[a]s a direct result of the inaccurate reporting by Defendant, Plaintiffs were required to pay an interest rate that was higher than they would have been required to pay [on the vehicle they purchased in 2010] if Defendant[ ] had not been negligent in [its] handling of Plaintiff[s'] mortgage account."   (Compl. [Doc. #5], ¶ 35.) Defendant contends that if this claim is an FCRA claim, then it should be dismissed, because the statute of limitations has expired.   Plaintiffs do not respond to this argument.

"The FCRA is a comprehensive statutory scheme designed to regulate the consumer reporting industry."   Ross v. F.D.I.C., 625 F.3d 808, 812 (4th Cir. 2010) (citing 15 U.S.C. § 1681(a)).   In addition to regulating consumer reporting agencies, the FCRA also describes responsibilities of those who report credit information to consumer reporting agencies, which would be the focus of Plaintiffs' claim here, if it was intended to be a FCRA claim.  With regard to the FCRA's provisions as to those who report credit information, the Fourth Circuit has described the relevant provisions as follows:

> Section 1681s-2 describes the responsibilities of those who report credit information to [consumer reporting agencies].  Section 1681s-2(a) explains the "[d]uty of furnishers of information to provide accurate information," which includes correcting any errors in reporting. 15 U.S.C. § 1681s-2(a)(1)-(2). Section 1681s-2(b) contains the duties of furnishers of information "[a]fter receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency."  15 U.S.C. § 1681s-2(b)(1). These duties include conducting an investigation into the dispute and correcting any errors discovered with the [consumer reporting agencies]. Id.

Ross, 625 F.3d at 813.

The basis of this claim is the allegation that Plaintiffs' purchase of a vehicle in 2010 was subject to a higher interest rate than they would have otherwise been subject to, had Defendant not reported inaccurate information to consumer reporting agencies about Plaintiffs. FCRA claims must be brought "not later than the earlier of—(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. Plaintiffs do not offer any reason why the date of discovery of this violation should be later than the date of purchase, when Plaintiffs presumably found out about the higher interest rate that they were receiving on the vehicle they were purchasing. Therefore, Plaintiffs' claim began to accrue on the earlier date of discovery of the alleged violation—that is, the date of purchase in 2010.

Plaintiffs' Complaint was filed in state court on September 16, 2013. Therefore, even if Plaintiffs purchased the vehicle on the last day of the year in 2010 (December 31, 2010), the Complaint was still filed more than two years after they first discovered that they would have to pay a higher interest rate on the purchase of a new vehicle. As such, to the extent that Plaintiffs are filing a FCRA claim, the statute of limitations has run. Therefore, to the extent that this cause of action is a FCRA claim, this claim is dismissed.

ii.     If this is a Common Law Negligence Claim

If Plaintiffs are instead bringing this cause of action as a common law negligence claim, the FCRA's comprehensive legislative framework includes 15 U.S.C. § 1681t(b), a "strong preemption provision," placed there "in part, to avoid a 'patchwork system of conflicting regulations.'" Ross, 625 F.3d at 813 (quoting Michael Epshteyn, Note, The Fair and Accurate

Credit Transactions Act of 2003: Will Preemption of State Credit Reporting Laws Harm Consumers?, 93 Geo. L.J. 1143, 1154 (2005)). With regard to the responsibilities of those who report credit information to consumer reporting agencies, the preemption provision at issue is found in 15 U.S.C. § 1681t(b)(1)(F). Id. 15 U.S.C. § 1681t(b)(1)(F) provides that, "[n]o requirement or prohibition may be imposed under the laws of any State (1) with respect to any subject matter regulated under . . . (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." 15 U.S.C. § 1681t(b)(1)(F) (2012). Because Plaintiffs' cause of action concerns Defendant's reporting of inaccurate credit information to consumer reporting agencies, "an area regulated in great detail under § 1681s-2(a)-(b)," "it is squarely preempted by the plain language of the FCRA." Ross, 625 F.3d at 813 (citing 15 U.S.C. § 1681t(b)(1)(F)). Therefore, if Plaintiffs intended to bring a common law negligence claim in this cause of action, such a claim is preempted by the FCRA.

However, Plaintiffs respond by contending that their cause of action is not preempted, because it should fall within the FCRA's "malice or willful intent to injure" exception to the general bar against state law actions, found in § 1681h(e). (Resp. to Def.'s Mot. to Dismiss [Doc. #17], at 13-14.) This argument is problematic for several reasons. First, the Complaint itself alleges that the inaccurate reporting of information is a result of Defendant's "negligent" handling of Plaintiffs' account. The Fourth Circuit has held that § 1681h(e) "malice or willful intent to injure" exception does not encompass claims where conduct is merely negligent. Ross, 625 F.3d at 816-17 (concluding that the § 1681h(e) exception authorizes state lawsuits only for conduct that is "truly malicious" and not simply negligent). Therefore, to the extent that

Plaintiffs are bringing a common law negligence claim under this cause of action, such a claim does not fall under the § 1681h(e) "malice or willful intent to injure" exception.

Furthermore, even if this Court were to allow Plaintiffs to amend their Complaint to allege malice or intentional conduct instead of negligence, Plaintiffs, again, do not clarify or say what state law cause of action would incorporate this malice or willful intent. To the extent that Defendant interpreted this cause of action as either a FCRA claim or a common law negligence claim, Plaintiffs do not respond or provide a proposed amended complaint that would correct or clarify Defendant's interpretation that this is either a FCRA claim or a common law negligence claim. As such, even if this unnamed state law claim is something other than common law negligence and not preempted by the FCRA, this Court cannot tell from the allegations of the Complaint whether Plaintiffs have satisfied the basic elements or statute of limitations requirements for such a claim. Therefore, without knowing what type of claim Plaintiffs intended to bring here, Plaintiffs have not stated a claim upon which relief may be granted. Thus, the Court will grant Defendant's Motion to Dismiss [Doc. #10] with regard to Plaintiffs' fifth cause of action. Therefore, this fifth cause of action for "negligent and/or intentional damage to credit report" is dismissed.

IV.    CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss [Doc. #10] is GRANTED IN PART and DENIED IN PART. Specifically, the Court will GRANT Defendant's Motion as to all of Plaintiffs' claims, except Plaintiffs' unfair and deceptive trade

practices claim.  Therefore, counts two through five of Plaintiffs' Complaint [Doc. #5] are hereby DISMISSED.

This, the 7th day of August, 2014.

United States District Judge